ABC LIQUIDATORS, INC. and Wilbur Swearingen and George Jacobs, d/b/a Reliable Auction, Plaintiffs-Respondents,

v.

KANSAS CITY, Missouri, a Municipal Corporation, and H. Roe Bartle, Mayor of Kansas City, Missouri, et al., Defendants-Appellants.

No. 46954.

Supreme Court of Missouri,

Division No. 1.

April 13, 1959.

Benj. M. Powers, City Counselor, John J. Cosgrove, Associate City Counselor, Timothy D. O'Leary, Kansas City, for appellants.

Jack B. Robertson, Kansas City, for respondent ABC Liquidators, Inc.

DALTON, Judge.

This is an appeal from a judgment entered against the City of Kansas City,

Missouri, and certain named administrative officials of said municipality, permanently restraining them from enforcing the city's ordinance prohibiting the holding of public auctions on Sunday. Plaintiffs' petition set out the questioned ordinance and challenged its constitutionality and validity, as hereinafter stated. Defendants moved to dismiss on the ground that the petition failed to state facts upon which relief could be granted. The motion was overruled on February 25, 1958. Thereafter, on April 23, 1958, the defendants declined to plead further and the court entered judgment for the plaintiffs and enjoined the defendants from enforcing the ordinance, hence this appeal.

In view of the issues presented we must look to the allegations of the petition. The petition alleged that ABC Liquidators, Inc., is a corporation organized according to law; that Wilbur Swearingen and George Jacobs are doing business as Reliable Auction; that they are engaged in the business, trade and profession of operating a place of business for the purpose of selling personalty at auction under licenses duly issued by the Clerk of the County Court of Jackson County, Missouri, and the defendant, City of Kansas City, Missouri; that Ordinance No. 19978, adopted by defendant city on May 23, 1956, provides as follows:

"Section A. That the Revised Ordinances of Kansas City, 1946, are hereby amended by enacting a new section to be added thereto to be known as Section 5–8.1, prohibiting auctions on Sunday, said section to read as follows:

"Section 5–8.1. No person shall hold or conduct a public auction on Sunday.

"Section B. That the Revised Ordinances of Kansas City 1946, be and they are hereby amended by repealing Section 5–10 thereof relating to exceptions, and enacting in lieu thereof a new section of like number relating to the same subject, which said section shall read as follows:

"Section 5–10. Excepted Sales. The provisions of this chapter shall not extend to any public sale held under legal process."

Penalties for violation of the mentioned ordinance were provided by another ordinance not in question here.

The petition further alleged that,

"Ordinance No. 19978, Sections A and 5–8.1 are void and invalid in the following respects:

"(a) It denies these plaintiffs and each of them the equal protection of the law as guaranteed to them by the 14th Amendment to the Constitution of the United States and Section 1 thereof.

"(b) It is in violation of Section 2 of Article 1 of the Constitution of Missouri in that it denies these plaintiffs equal rights and opportunity under the law and the enjoyment of the gains of their own industry as guaranteed to them by said section.

"(c) It is unreasonable, arbitrary, discriminatory, oppressive, and unequal in its application, all in violation both of Section 1 of the 14th Amendment to the Constitution of the United States and of Section 2 of Article I of the Constitution of Missouri.

"(d) It unreasonably and arbitrarily and without any fair and substantial reason relating to the general object and legislative purpose to be accomplished, wrongfully, arbitrarily and unreasonably places the business of these plaintiffs into an arbitrary and unreasonable class, and arbitrarily attempts to distinguish between the business of selling goods at auction and the business of all other forms of selling personalty.

"(e) There is no peculiarity in the condition of those engaged in the business of selling at public auction which justifies their segregation for the purpose of prohibiting them from conducting such business upon the day specified in said ordinance, and such business is not calculated to be accompanied by noise, confusion, and excitement, and if held on Sunday will not result in special desecration of the Sabbath, and disturbance of the day of rest.

"(f) Said ordinances constitute a local or special law and are contrary to the provisions of Section 40 of Article III of the Constitution of Missouri which prohibits the enactment of a local or special law where a general law can be made applicable."

The trial court did not indicate the theory of law upon which it acted in overruling the motion to dismiss and the respondents have not favored us with a brief. The cause was submitted here on the record and appellants' brief.

Appellants contend that the court erred in refusing to dismiss plaintiffs' petition and in restraining defendants from enforcing the ordinance for the reason that a legislative body has a wide discretion under its police powers to separate people into classes; and because auctioneers and auctions may be legally regulated as a distinct class of business.

It should first be noted that the state law, to wit, Section 563.720 RSMo 1949, V.A.M.S., provides: "Every person who shall expose to sale any goods, wares or merchandise * *. * on the first day of the week, commonly called Sunday, shall, on conviction, be adjudged guilty of a misdemeanor * * *." Section 563.730 RSMo 1949, V.A.M.S., provides that "Section 563.720 shall not be construed to prevent the sale of any drugs or medicines, provisions or other articles of immediate necessity."

■ Section 563.720, evidencing the police power of the state to provide for the general welfare has repeatedly been held valid when attacked on the ground that it violated certain provisions of the Constitution of the United States and of the State of Missouri. State v. Ambs, 20 Mo. 214; City of St. Louis v. DeLassus, 205 Mo. 578, 104 S.W. 12; State v. Campbell, 206 Mo. 579, 585, 105 S.W. 637. And see McKaig v. Kansas City, 363 Mo. 1033, 256 S.W.2d 815, 818; Komen v. City of St. Louis, 316 Mo. 9, 289 S.W. 838, 841; City of Springfield v. Smith, 322 Mo. 1129, 19 S.W.2d 1; State v. Hogan, 212 Mo.App. 473, 252 S.W. 90; State v. Ohmer, 34 Mo.App. 115, 123; State v. Malone, 238 Mo.App. 939, 192 S.W.2d 68; State v. Haliburton, Mo.App., 194 S.W.2d 206; State v. Halliburton, Mo. App., 276 S.W.2d 229.

■ In State v. Chicago, B. & Q. R. Co., 239 Mo. 196, 209, 143 S.W. 785, 786, this court said: "Sunday is a day of dual character. It is the Christian's day of worship; it is also the day of rest of men everywhere, irrespective of whether they have or have not a creed or a religious belief. The law does not deal with Sunday as a day of worship, but with it only as a day of rest. The confusion of the two characteristics of the day has doubtless contributed to the large number of conflicting decisions by the courts. The Missouri Sunday laws have regard to that day as a day of rest, and not to the religious character of the day. They are civil, not religious regulations, and are based upon a sound public policy which recognizes that rest one day in seven is for the general good of mankind. Hennington v. State of Georgia, 163 U.S. 299–304, 16 S.Ct. 1086, 41 L.Ed. 166. Those laws are sustained as civil, municipal or police regulations, without reference to the fact that the day of rest is also the Christian's day of rest and worship." And see Nichols v. North Kansas City, 358 Mo. 402, 214 S.W.2d 710, 712.

Sections 563.720 and 563.730 have been held not in conflict with an ordinance of the

city of St. Louis prohibiting the keeping open of grocery stores and the selling of goods therein on Sunday. City of St. Louis v. Bernard, 249 Mo. 51, 155 S.W. 394, 396. And see City of St. Louis v. DeLassus, supra; Komen v. City of St. Louis, supra, 289 S.W. 838, 841.

■ Respondents' petition does not expressly allege any conflict between the city ordinance in question and the statute in question, or that respondents are engaged in the sale of "any drugs or medicines, provisions or other articles of immediate necessity" at public auction or that they seek an injunction against appellants on such ground. They do say that "there is no peculiarity in the condition of those engaged in the business of selling at public auction which justified their segregation for the purpose of prohibiting them from conducting such business upon the day specified in the said ordinance." While we find that ordinances of cities in other states prohibiting the sale of merchandise at public auction on Sunday have been held valid, these ordinances were attacked on other grounds, such as a provision prohibiting auction sales after 6 P. M. or on other provisions of the ordinances. See State v. Gordon, 143 Conn. 698, 125 A.2d 477, 479; Levy v. Stone, 97 Fla. 458, 121 So. 565. In so far as the Sunday feature of the ordinance in question is concerned it is consistent with the state statute referred to. Further, Section 19, Article VI of the Constitution of Missouri 1945, V.A.M.S., provides that "any city having more than 10,000 inhabitants may frame and adopt a charter for its own government, *consistent with and subject to the constitution and laws of the state * * *.*" (Italics ours.) Kansas City has adopted a special charter and the ordinance here was adopted thereunder. As stated, we find no conflict between the ordinance and the state law or state constitution on the Sunday feature of the ordinance. The ordinance supplements the state law and is not in conflict with it. City of St. Louis v. Bernard, supra; City of St. Louis v. Ameln, 235 Mo. 669, 686, 139

S.W. 429. The matter will be mentioned further in discussing the exercise of the police power by the city.

■ We will next consider the charge that the ordinance violates the due process and equal protection clauses of the federal and state constitutions. Section 1 of the 14th Amendment to the Constitution of the United States and Section 2 of Article 1 of the Constitution of Missouri 1945. It is apparent that the ordinance in question purports to be an exercise of the police power, which power has been conferred upon the city of Kansas City by statute. Section 82.300 RSMo 1949, V.A.M.S.; Turner v. Kansas City, 354 Mo. 857, 191 S.W.2d 612, 617(8–10). A proper exercise of the police power is essential to the continuance of community life in a densely populated urban center and to its public safety, health, morals, convenience, welfare, interest and general prosperity, which vary with the specific locality and the changing requirements of life from time to time. Turner v. Kansas City, supra. "The limit of the exercise of the police power is necessarily flexible, because it has to be considered in the light of the times and the prevailing conditions." State v. Gordon, supra, 125 A.2d 477, 480. "Upon it (the police power) depends the security of social order, the life and health of the citizen, the comfort of an existence in a thickly populated community, the enjoyment of private and social life, and the beneficial use of property." Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 13 S.W.2d 628, 635.

In the last mentioned case, where the plaintiffs-appellants therein were attacking a city ordinance and had appealed from an adverse judgment, this court said: "It has been definitely and clearly established and settled, by the decisions of this court and of the federal Supreme Court, that a statute or a municipal ordinance, which is fairly referable to the police power of the state or municipality, and which discloses upon its face, or which may be shown aliunde, to

have been enacted for the protection, and in furtherance, of the peace, comfort, safety, health, morality, and general welfare of the inhabitants of the state or municipality * * * cannot be held invalid as wrongfully depriving the appellants of any right or privilege guaranteed by the Constitution, state or federal; the reason and basis underlying such decisions being that the personal and property rights of the individual are subservient and subordinate to the general welfare of society, and of the community at large, and that a statute or ordinance which is fairly referable to the police power has for its object the 'greatest good of the greatest number.'" Bellerive Inv. Co. v. Kansas City, supra, 13 S.W. 2d 628, 634(1); Turner v. Kansas City, supra, 191 S.W.2d 612; State ex rel. Rouveyrol v. Donnelly, 365 Mo. 686, 285 S.W. 2d 669, 674(1–4).

■ As in the Bellerive Investment Co. case, supra, the question here presented for our consideration is whether the ordinance in question is fairly referable to the police power of the appellant municipality, and whether the expressed requirements or regulations of the ordinance have a substantial and rational relation to the health, safety, peace, comfort, and general welfare of the inhabitants of the municipality. If such question may be answered in the affirmative, then, under the decisions of this court and of the U.S. Supreme Court the ordinance cannot be held to infringe the constitutional rights and guaranties invoked by the respondents here in their petition, unless it well can be said that the ordinance passes the bounds of reason and assumes the character of a merely arbitrary fiat. Zinn v. City of Steelville, 351 Mo. 413, 173 S.W.2d 398, 400(1).

■ The ordinance purports to regulate public auctions, except public sales held under legal process, by prohibiting them on one day of the week, to wit, on Sunday. The term "auction" is defined in 7 C.J.S. Auctions and Auctioneers § 1 a, p. 1239, as follows: "An auction is a public sale of property to the highest bidder, by one licensed and authorized for that purpose. The main purpose of auction sales is to obtain the best financial returns for the owner of the property sold; and they are based on the purpose and policy of obtaining the worth of property by free and fair competition among the bidders; and hence competition among a number of bidders is a necessary element."

In 5 Am.Jur. 446, Auctions, Sec. 2, the term is defined, as follows: "An auction, as usually defined, is a public sale of property to the highest bidder, although there is a form of auction commonly known as a 'Dutch auction' where the property is put up at a price greater than its value and the price is then gradually lowered until someone closes the sale by accepting the offer and thus becoming the purchaser." Competitive bidding, up or down, has been said to be an essential element of an auction sale. B. H. Stief Jewelry Co. v. Walker, 36 Tenn.App. 427, 256 S.W.2d 392, 397. The term "auction" is defined in Black's Law Dictionary, 3d Ed. as "a public sale of land or goods, at public outcry, to the highest bidder." The term "auctioneer" is defined as "a person authorized or licensed by law to sell lands or goods of other persons at public auction; one who sells at auction."

■ While the business of auctioneering is a lawful business and a useful one, it is universally held that the legislature has the power to prohibit auctioneering, except through licensed auctioneers, and it may, also, make other regulations which are reasonable and not wholly arbitrary. Hagerman v. City of St. Louis, 365 Mo. 403, 283 S.W.2d 623, 629, 53 A.L.R.2d 1423; Balesh v. City of Hot Springs, 173 Ark. 661, 293 S.W. 14, 15; Dornberg v. City of Spokane, 125 Wash. 72, 215 P. 518, 31 A.L. R. 295; Biddles, Inc., v. Enright, 239 N.Y. 354, 146 N.E. 625, 629, 39 A.L.R. 766; Holsman v. Thomas, 112 Ohio St. 397, 147 N.E. 750, 39 A.L.R. 760; Carlton v. City of Watertown, 124 Misc. 244, 207 N.Y.S.

339; Commonwealth v. Loeb, 245 Ky. 843, 54 S.W.2d 373. And see annotations "Regulations affecting auctions and auctioneers," 31 A.L.R. 299, 39 A.L.R. 773, 111 A.L.R. 473.

Those engaged in the business of selling at public auction have long been subject to regulation and licensing in this state. See Sec. 2 of an Act approved December 6, 1820, 1 Terr. & State, Laws, p. 694. Section 343.010 RSMo 1949, V.A.M.S., now provides that "no person shall exercise the trade or business of a public auctioneer by selling any goods or other property subject to duty under this chapter, or real estate, without a license." Section 343.100 requires at least six months residence in the state and, under Sec. 343.110, a bond must be given before a license is issued. Under Sec. 343.130, a tax is levied on the proceeds of the sales of property at auction. Most cities, towns and villages in this state are authorized to license, tax and regulate auctioneers. See Sections 73.110(17), 75.110, 94.110, 94.270, 94.360, 80.090 and 74.127(2) RSMo 1949, V.A.M.S. An auctioneer must comply with the requirements of both the state law and any applicable city ordinance. Simpson v. Savage, 1 Mo. 359; Willis v. City of Boonville, 28 Mo. 543.

■ The regulation of the sale of goods at public auction is under the police power and it is of the very essence of the exercise of the police power that citizens may, for the public good, be constrained in their conduct with reference to matters in themselves lawful and right. Hopper v. Stack, 69 N.J.L. 562, 56 A. 1; Solof v. City of Chattanooga, 180 Tenn. 296, 174 S.W.2d 471, 176 S.W.2d 816.

Many of the cases approving the reasonable regulation of auctions by city ordinance are based upon the fact that it is recognized that auction sales of merchandise are attended with far greater risk of fraud and loss to the public than in ordinary retail sales of merchandise by merchants. Saigh v. Common Council of City of Peto-

skey, 251 Mich. 77, 231 N.W. 107; City of Rochester v. Close, 35 Hun. 208; City of Buffalo v. Marion, 13 Misc. 639, 34 N.Y.S. 945; Levy v. Stone, 97 Fla. 458, 121 So. 565, 566; Clein v. City of Atlanta, 164 Ga. 529, 139 S.E. 46, 53 A.L.R. 933; Matheny v. Simmons, 165 Miss. 429, 139 So. 172; Wagman v. City of Trenton, 102 N.J.L. 492, 134 A. 115; Biddles, Inc. v. Enright, supra, 146 N.E. 625; Gordon v. City of Indianapolis, 204 Ind. 79, 183 N.E. 124, 126; Carlton v. City of Watertown, supra, 207 N.Y.S. 339, 342.

While it is apparent that the sale of goods at public auction on Sunday would not necessarily be more likely to be attended with fraud and imposition upon buyers than on other days in the week, still the right to regulate sales at public auction depends on the inherent or known evils or dangers to public welfare connected with such auction sales and such evils or dangers are not necessarily limited to the dangers of fraud or other imposition on buyers.

■ The United States Supreme Court in Patsone v. Commonwealth of Pennsylvania, 232 U.S. 138, loc. cit. 144, 34 S.Ct. 281, 282, 58 L.Ed. 539, in dealing with the police power of the state said: "A state may classify with reference to the evil to be prevented, and that if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. * * * The state 'may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses.'" And see Star Square Auto Supply Co. v. Gerk, 325 Mo. 968, 30 S.W.2d 447, 455. The police power is such that any trade, calling, or occupation may be reasonably regulated in the interest of the public welfare if the general nature of the business is such that, unless regulated, many persons may be exposed to hazards and misfortunes against which the legislative body can properly protect them.

This court may and does take judicial notice of matters of common knowledge. Elder v. Delcour, 364 Mo. 835, 269 S.W.2d 17, 19, 47 A.L.R.2d 370. The sale of goods at public auction is ordinarily accompanied by noise, crowds and to some extent excitement. Sale at "public outcry" calls to mind the call of the auctioneer. As stated, competitive bidding is one of the elements and the auctioneer in accordance with his duty seeks to speed sales and obtain the maximum returns. Noise, crowds, confusion and excitement are the natural accompaniment of public auctions. When we add to these matters the fact of the various prohibitions provided by the statutes of this state with reference to Sunday labor, Sunday horse racing and the sale of goods, wares and merchandise on Sunday (see Sections 563.690, 563.710 and 563.720 RSMo 1949, V.A.M.S.), it is apparent that auction sales on Sunday may be classified separately from auction sales on other days of the week. In the case of Nichols v. North Kansas City, 358 Mo. 402, 214 S.W. 2d 710, 712, this court said: "Whether due to religious sentiment or to the well recognized fact that one day's rest in seven is beneficial to mankind, it is universally held that the police power authorizes different regulations and restrictions as to the conduct of business on the Sabbath from that permissible on other days." And see City of Springfield v. Smith, 322 Mo. 1129, 19 S.W.2d 1, 4; State v. Halliburton, Mo.App., 276 S.W.2d 229, 234. The ordinance therefore does have a direct connection with public health, comfort and general welfare and supplements the state statute prohibiting sales of goods, wares and merchandise on Sunday.

The ordinance excepts "any public sale held under legal process," or sales commonly referred to as judicial sales. A judicial sale has been defined as "one made under the process of a court having competent authority to order it, by an officer duly appointed and commissioned to sell, as distinguished from a sale by an owner in virtue of his right of property." Black's Law Dictionary, 3d Ed. And see 50 C.J.S. Judicial Sales § 1, p. 577. A judicial sale is defined in Noland v. Barrett, 122 Mo. 181, 26 S.W. 692, 694, as "a sale under a decree or order of the court, and which must be reported to the court for its approval." The law governing auction sales is very different from the law governing judicial sales. See 50 C.J.S. Judicial Sales p. 575; 77 C.J.S. Sales § 1, p. 575 and 7 C.J.S. Auctions and Auctioneers § 1, p. 1239. Further, factually public auctions are ordinarily very different from public sales under legal process. Public interest in judicial sales is ordinarily very limited. Auctions are ordinarily conducted by individuals or corporations as a voluntary business or as a part of the business of selling goods for profit, while judicial sales are made by an officer or representative of the court appointed and commissioned to sell property under the process of the court and the profit motive is not involved.

We have heretofore reached the conclusion that a sound basis in fact exists for the classification made by the ordinance between public auctions and the excepted public sales under legal process. We further hold there is a substantial basis for classifying public auctions on Sunday from public auctions held at other times. We further hold that the ordinance in question, being a valid exercise of the police power theretofore delegated to Kansas City, does not violate the due process or equal protection provisions of the federal or state Constitutions. Nor does it deny to respondents equal rights and opportunity under the law or deny them the enjoyment of the gains of their own industry. The ordinance is not prohibitory, but provides a reasonable regulation of public auctions by prohibiting them on Sunday. The ordinance is uniform in its operation upon the class to which it applies. It is directed against public auctions, which we have seen are a natural and reasonable subdivision of the sale of merchandise and commodities and are subject to regulation. The ordinance is not arbitrary nor discriminatory,

since it rests upon a valid classification based upon the type of the sale, which is different from other forms of selling personal property.

■ There remains the question of whether the ordinance constitutes a local or special law contrary to the provisions of Sec. 40 of Article III of the Constitution of Missouri 1945, which prohibits the enactment of any local or special law where a general law can be made applicable. The question presented is "a judicial question to be judicially determined without regard to any legislative assertion on that subject." Article III, Sec. 40(30), Const. of Missouri.

■ "The courts must determine the question, as other purely judicial questions are determined, by reference to the nature of the subject; not upon proof of facts or conditions, but upon the theory that judicial notice supplies the proof of what courts are bound to know, and that courts must be aware of those things which are within the common knowledge, observation and experience of men generally." Anderson v. Board of Com'rs of Cloud County, 77 Kan. 721, 95 P. 583, 587; City of Springfield v. Smith, 322 Mo. 1129, 19 S.W.2d 1, 4; Bowman v. Kansas City, 361 Mo. 14, 233 S.W.2d 26, 30.

■ While courts will ordinarily presume that municipal officials, in enacting such an ordinance as this, have acted reasonably, and that the ordinance has some relation to the public health, safety, convenience, or welfare, yet the courts will, without hesitancy, declare invalid an ordinance which appears from the testimony or upon its face to be clearly unreasonable. However, the burden of showing that the classification made rests upon an unreasonable basis or distinction rests upon the respondents in the case, who have made the attack upon the ordinance. City of Springfield v. Smith, supra, 19 S.W.2d 1, 10(13); Nichols

v. North Kansas City, 358 Mo. 402, 214 S.W.2d 710, 712(5). "It is well established in this state that a law is not a special law if it apply to all alike of a given class, provided the classification thus made is not arbitrary or without reasonable basis." City of Springfield v. Smith, supra, 19 S.W.2d 1, 3(2); Reals v. Courson, 349 Mo. 1193, 164 S.W.2d 306, 307; Laclede Power & Light Co., 353 Mo. 67, 182 S.W.2d 70, 72; McKaig v. Kansas City, supra, 256 S.W.2d 815, 817. In the McKaig case the applicable rules for determining whether a law is local and special are fully discussed and it was held, in conformity with other cases cited, that "the test of a special law is the appropriateness of its provisions to the objects that it excludes. It is not, therefore, what a law includes, that makes it special, but what it excludes." And see Hagerman v. City of St. Louis, supra, 283 S.W.2d 623, 630(7). "If an ordinance includes all who are similarly situated and there is a reasonable basis for the classification, the ordinance is not a special law * * *." Jones v. Walker, 357 Mo. 476, 209 S.W.2d 147, 148.

■ If, therefore, the classifications provided by the ordinance, to wit, classifying sales at public auction in a different class from that of other ordinary and usual private sales and different from public sales under legal process, and if such classifications are reasonable and not arbitrary in view of the inherent or known evils or difficulties connected with public auctions as sought to be remedied by the ordinance, then our problem is solved and the ordinance is valid as against the contention made. Since we have held the classification reasonable, it follows that the ordinance does not violate Article III, Section 40.

The judgment is reversed and the cause remanded with directions to sustain the motion to dismiss the petition.

All concur.